The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Craig H.D. Armand presiding. Good afternoon, Counsel. The next case is 4-21-0627, People of the State of Illinois v. Damar Meyers. Could Counsel for the Appellant please state your name for the record. James Waller with the Office of the State Appellate Defender for Damar Meyers. Thank you, Counsel. Counsel for the Appellate, could you please state your name for the record. Douglas Malcolm for the State. Thank you. Mr. Waller, you may proceed. Thank you. May it please the Court, Counsel. In this case, the trial court erred by denying Damar Meyers' motion to suppress the inadmissible statements he made, which were a large and crucial piece of the state's case at trial. In addition, Damar did not receive the effective assistance of counsel, who mishandled the admission of substantive evidence, mishandled impeachment, and failed to preserve issues. Because of these constitutional deprivations, this Court should reverse the guilty findings in the case outright or, in the alternative, reverse the guilty findings and remand the case for a new trial. If you watch the unedited video of the interrogation, when he was taken into custody, he was placed into an interview room and interrogated for two hours before he broke down and made inculpatory statements. You'll see at the beginning of the video, he's sitting at his elbows, alert, much like I am today, conversing with the detectives. After two hours of promises and threats, Damar is hunched over, his face inches from the table, and a very clear illustration of what it looks like when someone's will is overcome, to the extent that they're about to give an involuntary confession, which is exactly what the case law will discuss aims to prevent. Over those two hours of custodial interrogation, Damar was told that he's in a position where the detectives want to help him, that making a statement couldn't hurt, and it couldn't get any worse, which would directly contradict the Miranda warnings he was just given. He's told that getting his side out can potentially mean years of his life back, or when the detectives meet with the state's attorney, if I'm able to tell him that I think you're honest about everything, that's something that'll be taken into consideration, potential years of your life back, he's told that a couple of times. They said that they're giving Damar the opportunity to help himself, and that there's no way, without that, without his explanations, there's no way they can go to bat for him. The detectives say, this might be your only opportunity, and in years to come, you're going to be sitting somewhere, wish you'd done everything you can to help yourself. They clarify, that opportunity is when people that make decisions, they're going to look at our reports, they're going to ask what was said, judges, lawyers, prosecutors, the cops, even juries, and then officers continue saying, you need to let me and Brian, the other detective, have the opportunity to go to bat for you and try to help you. So they couple a specific offer of leniency with the statements that they want him to make. After two hours of those threats and promises, and cajoling, including promise to let him make a phone call, which was very important for him that day, Damar finally takes him up on their specific conditional offer. He says, I'm going to tell you my story, man, but you better not me over on calling my people. After two hours of these promises, in exchange for statements, they've overcome his will and elicited an involuntary confession. In People v. Hyde, the Illinois Supreme Court stated that the rule in Illinois is that a confession obtained under the promise of hope or immunity is not admissible in evidence. As black letter law, they went on to say, a confession becomes incompetent whenever any degree of influence has been exerted by a person having authority over the person or the charge that might tend to cause duress or hope of leniency. Now, in that case in Hyde, the officers had told the defendants, it would be better if they told the truth, that if they told the truth, they'd be taken to the state's attorney and allowed to make a statement that the state's attorney might show them leniency, and that's it. The Hyde defendant objected to the admission of statements that were elicited by those vague nebulous promises and the court overruled that objection admitted statements. Reversing that, the Supreme Court concluded that although the police officers made no direct promises of leniency, their statements were such as to raise the hopes of leniency in the defendant's minds. Later, this court, in People v. Ruger, analyzed the question from the other direction, where the trial court had suppressed statements in question and the state had appealed. In that case, this court looked at the totality of circumstances to determine the voluntariness of the defendant's statements. This court said that the relevant factors to consider were the defendant's age, intelligence and experience, length and intensity of the interrogation, and prior refusals to answer questions. The defendant, Ruger, was an 18-year-old high school senior that was familiar with the criminal process. He was questioned for 20 minutes by an uncle and another detective. No definite promises were made by the officers. According to the defendant, the detective told him that other defendants who had made statements had gotten probation. If he kept his nose clean, officers would go to bat for him, said that if he confessed to everything, they'd help him get a PR bond. The uncle, the police captain, even denied making those offers. But this court concluded that the trial court's finding that the state had not met its burden of showing that the confession was voluntary was not against the manifest way to the evidence. In this case, we have a defendant that's less educated than Ruger was, and who was interrogated for six times longer than Ruger's 20-minute conversation. But perhaps more importantly, the officers, excuse me, the offers of leniency were far more explicit and numerous. In terms of explicit offers, in Ruger, it seemed like there the appellate court was able to firmly identify or clearly identify an offer to get him released on a PR bond. And also, the officers were fairly specific about the possibility of probation if he cooperated, if they would go to bat for him. What is it, and I think you were just getting to it here, what is it that constitutes specific offers? What you were going to say, I think, more specific in this case. In Ruger, I believe that what they said was they would go to bat for him with the opportunity to get probation and the opportunity to get PR bond. It wasn't an exact quid pro quo, one for one offer. They said they would go to bat for him for the chance to get those things. And to be clear here, yes, they weren't saying that, they weren't promising he would get that, but going to bat for something very specific. Here, the words go to bat were used, but what specifically did the officers say about what they might do? What specificity was involved here? The specific benefit, your honor, that they hang over his head is the offer of years of his life back. And they offer a couple of different paths to get there. Through the discretion of the state's attorney, through the discretion of judges, they even indicate that the jury is going to listen to how much he's cooperated and that might affect the decision. I mean, I think, frankly, that's kind of playing on the lack of sophistication of the defendant in this case, because we know that that's not what happens. But what the specific benefit they offer is years of his life back. And they offer a few different routes to that through the discretion of the state's attorney and people reviewing their reports. So, under the excuse me. Sorry about that. So whether this court follows the bright line Supreme Court rule, holding that any degree of influence by an officer that tends to raise even the hope of leniency renders a confession incompetent, or if the court analyzes the voluntariness under the totality of the in violation of this Fifth Amendment right against self incrimination. As this court must review that ultimate legal question de novo, and in the light most favorable to tomorrow. This court should find the trial court aired and denying the motion to suppress. If there are no other questions about that I'd love to address the second argument, briefly. Well, still on that, that argument there, you really place primary emphasis on Ruger and support of your argument here. Ruger though involved. The, the trial court, granting the motion to suppress and on appeal the state was suggesting that the, the suppression was in error. So the facts that are highlighted in Ruger, the findings made by the trial judge, you actually have the opposite procedural position here. As compared to this case right. Yes, Your Honor, and that's why I actually rely a little bit more strongly on hide. This is a little bit more similar to hide, which has been black letter law for, I mean 100 years now as of this year has not been overturned or seriously questioned. In that case, the, the statements came in, and the Illinois Supreme Court said that the court was the trial court was an error for doing so. And again, in height I would, I would argue that the offers made are much more nebulous and much less specific benefits offered in exchange for his statements here, the, the offer again, the specific benefit that they offer is years of his life back either through reduced charges with the state's attorney I mean they hinted all of these things of course that the officer seems somewhat aware of some of the case law, and they offer around it they don't say, specifically, I'm going to go to the state's attorney, he's going to charge you with second degree murder or something like that they say the state's attorney is going to look at the different charges, just like in in Ruger when they handed the statute book and said, Look, you can be charged a lot of different things states turning might do different things depending on what we tell them you said that's very similar to the way they described states turning have a lot of discretion in these charges. Juries judges will all look at how honest you were, and that's going to mean years of your life back so again Hyde says anything that might tend to raise the hope of leniency renders a confession involuntary incompetent should have been suppressed. But as I said, even under a totality of the circumstances. Again, we have a defendant who's still relatively young I mean is in his 20s certainly older than the Ruger defendant, but somebody who didn't get out of middle school, he got a GED but no, not as no a family member can, you're going to take their advice a little more strongly, but here, he's his will is the defendant this case as well as being overborne by two detectives who are threatening him and offering them and he doesn't he knows that they don't, you know, his was overcome by these two detectives it's been two hours of what becomes a four or five hour interrogation. Yes, he does get food breaks later after he starts talking, but those first two hours of this interrogation are just them, making the same offers of leniency unbroken for two hours until, as I said, he's bent over his head just off the table. And he finally says all right I'm going to tell you my side, but you got to let me call somebody. We'd be relying on Hyde and Ruger's totalitarian circumstances. Now the case should also be remanded, because he was denied the effective assistance of counsel. In addition to failing to ask the court to suppress DeMar's statements at the time of trial or in the post trial motion, defense counsel in this case made a number of glaring mistakes that were just patently the result of oversight or negligence which prejudices client. The most obvious mistake was counsel's failure to move to admit exculpatory evidence that he clearly intended to introduce. There was a video recording from a camera positioned at a Western Union just a couple of blocks away from where this robbery took place. The defense's theory at trial was that the shooter identified by witnesses wearing a red hoodie ran south from the scene was captured a short time later on the Western Union camera. The camera was an opposite direction where the state's witnesses said that tomorrow, and the other robbers went the existence of this culprit would have raised a reasonable doubt that tomorrow Myers was there maybe or at least certainly that he personally discharged a firearm. There were between two and four people that went to rob that dice game that day. And it was in the defense's strategy to demonstrate the existence of a third or fourth person at the location of the robbery, because only two of the guns were known to have been fired if there was another person there. And there was be a reasonable doubt that tomorrow was the one of the people that actually fired the handgun that firearm enhancement constituted 20 years of this 45 year sentence. That's why counsel spent so much time discussing the video, and its contents with detectives as a check, because the video established the existence of someone else who might have fired one of the guns, but counsel just forgot to move to admit the video evidence. He asked the detective about it, you got a stipulation as to the videos foundation, and then just never moved to have it admitted. Counsel, can you. Again, I'm. You may be getting to the point that you want to make your book, what is the video would tell the jury that the witnesses didn't already convey. Well, one of the witnesses that would convey some of this information was Judy Bell, and her statements only came in. Council only got her statements in while discussing the course of the investigation with Detective Flynn. So we've got Judy Bell who says, look, somebody in a week, excuse me, we have one of the victims of the dice game say Eric Robertson was shot by somebody wearing a red hoodie. And we've got, we've got some of the co defendants saying it was just tomorrow and Marcus Ballard that ran down and then ran back up to the north. We've got Judy Bell saying hey there was somebody in a red hoodie ran this other direction the opposite way. And then we've got the Western Union video showing somebody in a red hoodie going that direction shortly thereafter. But both Judy Bell statements, and the video don't come in substantively because counsel just forgot to have them admitted. What do you, what do you mean by that. So, the court. The trial court was prior effect. The trial court heard this evidence. The trial court heard what the witness said. There was no objection made or offered to limit in any fashion. How, assuming it wasn't admitted substantively. How does this make any difference as far as the courts, having heard it, and it's total it's consideration of the total evidence, believe that it was the evidence was taken into a limited basis, opposing counsel asks, you're only asking this for the course of the investigation right. In other words, you're not offering this substantively and counsel says yes, because he's getting all this in hearsay through detective Flynn's testimony, and hearsay about the video through detectives agile check, because this is a bench trial Your Honor, we presume that the court was diligent is vigilant about not giving credence to things that are not taken substantively. It counsels and blurring the line they're attempting to blur the line there, you know, might get the evidence heard by a jury but we assume that the judge the bench trial is keeping those things straight so something's not admitted substantively. It doesn't come in at all. The judge never hears it effectively, and we see we see the same situation with the failure to perfect the impeachment. Counsel's confusion about whether it's sufficient to ask a witness about hearsay versus introducing the statements themselves reflects another area of his negligence. Under the defense's theory Michael Ross may have been the other perpetrator, along with Shaughnessy day and Marcus Barber. Okay. Both sides had jail call recordings of Michael Ross, telling his sister Jackie to delete certain Facebook posts right after the counsel asks Michael Ross and Jackie about these conversations, they both denied that they took place that they remember them happening and counsel's got the jail call recordings to contradict that to show that they're lying and hiding covering up Michael Ross's these recordings and what he heard and what he heard Ross said he did but the recordings were not introduced to perfect the impeachment. When, when you say he did. That's before the court does try or fact. He heard the cops say listen to the recordings. This is what they said. Is there some reason that the trial court is try or fact shouldn't believe losses, Zaza check. Your Honor. No, there's no reason the officer should the court doesn't believe them. Then, how does. What, what's the problem that is caused by not having the tapes themselves. I mean, this would just be essentially cumulative what bosses a check already said, wouldn't it. I know your honor because the, the, the statements have to be impeached by the actual evidence they can't be impeached by somebody else giving hearsay opinions about what the evidence contained, they have to be impeached by the primary document. That's not necessarily true. So I mean this is a bench trial. If they have checks testimony is offered, and it shows that Ross testified his testimony was wrong. And there's no objection being made to it. Then the trial court can consider that and give it any value of wishes, Canada. Your Honor, I don't believe that whether an objection is made as the controlling factor on whether the evidence is competent and taken for its full. Well, of course it is if we're talking about hearsay in particular hearsay objected to hearsay is always admissible for the way to be given to it. Your Honor, I think we run into, I think that it's dangerous if we set a rule that says it's okay to not impede it's not okay to fall it's okay to not follow the rules of evidence and impeach the primary document, as long as you've got somebody else that can come in and say it. It seems like we're, we're reducing. We're reducing the required competence of defense counsel because it's a bench trial. I was being argued as a rule counsel is being argued as to whether there's a sufficiency of the evidence before the trier of fact, those are two different things. The court heard it. In other words, there's no reason why the court can't accept the officer's testimony, what he said he heard in the tape without actually seeing the tape itself is there. I believe that he had well well so if we're looking at a deficient performance question, there's no, there's no, I think there's no question that it was deficient performance. If we're talking about you said that too fast. We're looking at a sufficient ineffective assistance question then what did you say, if it's a defective we're talking about the deficient performance prong. I think there's no question that this was not that other reasonably experienced attorneys in this circumstance would would absolutely have introduced the best evidence possible. If we're talking about prejudice, which which seems to be what you guys are saying that because he heard the judge heard this from a cop anyway from a detective anyway. There's no prejudice. I would disagree, I would say they're still prejudice because Ross's statement is never fully impeached just because the officer says something differently, but I don't understand why you're, you're saying this testimony by the officer doesn't constitute extrinsic evidence to perfect impeachment, are you saying that a witness cannot witnesses testimony can't constitute extrinsic evidence to perfect impeachment. Well, there's no reason there was no reason for it to, there's no reason to rely on the court to, excuse me, there was no reason for defense counsel to ask the court to take somebody's word for and it's always going to have less weight here, when we're talking about what an officer said the recording said, when we have the recordings, they, you know, first of all, we've got we got a best evidence situation. Defense counsel had those recordings, there's no reason not to introduce them, and to rely on the lesser those slightly less persuasive testimony of an officer who listened to recordings, at least once. That's the arm and I saw that the time is up may I ask one follow up question. Certainly. Mr Waller, again, from a black letter law standpoint, are you saying that a witnesses testimony can't constitute extrinsic evidence for use in perfecting impeachment, I just want to know black letter law laws. You're on I would honestly, I would have to do a little bit more research on that question to answer that fully, to be honest with you. Thank you. I certainly think it's better to have the actual document when it's sitting in your hand in court. Thank you, Mr Waller you'll have an opportunity on rebuttal. Thank you, Mr Malcolm. May I please the court counsel. Defendants confession was voluntarily made in the trial court did not air and finding as such. Additionally defended not receiving effective assistance of trial counsel during the trial. This court considers the totality of the circumstances and determining the voluntariness of a confession. And this includes whether or not promises of leniency were made by the interviewing detectives here if the interviewing detectives told the defendant that they would inform the prosecutor of any cooperation, that they would quote go to bat, unquote, or the defendant, and that a future potential jury could look favorably upon the cooperation, such that it might be years of his life back. These are not promises of leniency, because they are not tied to a specific result for which the detectives would advocate on behalf of the defendant. People the Ruger is an example of a specific results, where detectives told the defendant that if he confessed, they would advocate on his behalf for a recognizance bond and for probation. This court found that that rendered the confession involuntary. Now, conversely, in people vehicles about approximately a decade later, where the interviewing detective told the defendant that it would be in his best interest to get the truth out as soon as possible, and that he would tell the court and the prosecutor, if compared to Ruger, because the officers here did tell the defendant that they would inform the prosecutor of the defendant's cooperation if he chose to confess, and they did not tie their statements to the defendant to a specific result for which they would advocate on defendants behalf. Mr Malcolm there was one occasion during the interview where it was after officers that use the, the go to bat expression, but there hadn't been up to that point anything specifically tied to that. But at one point. They said that and defendant then responded saying, you know, going to bat or at bat isn't going to get him home any would not get him home. And then officer Henson or Detective Henson I can't remember which said, quote, get your home sooner. Close quote. So that would seem to pretty much imply that he would serve less time. If he cooperated, putting it more in the realm of a specific promise of leniency. What's your response to that. Certainly that may cause this instance to fall closer to Rugal Ruger, as opposed to being directly with echoes but if we're looking at these two on a on a spectrum. This is far closer to echoes, then Ruger, as while the, the statement. Get home sooner, I apologize for the paraphrase is not a direct promise not something that they're specifically going to advocate for, but something that would certainly be on the table for the defendant. That is a natural outcome or the natural inference that comes from a detective, communicating cooperation from a defendant to to a prosecutor, and or, of course, for the reasons specified unless there are any further questions on the voluntary net. Oh, actually I apologize I do have one more point. Even if this court finds that the statements made by made by the detectives were promises of leniency that is not dispositive. This court considers the totality of the circumstances including the defendants age, education experience, the duration and the nature of the interview here defendant 29 years old more than a decade beyond the legal age of adulthood defendant had a GED, which he completed while incarcerated the equivalent of a high school education, extensive experience with the legal justice system with three felonies while he was an adult three stays in the Illinois Department of Corrections, and for juvenile adjudications, and while the interview was approximately two hours long perhaps a little bit longer than that defendant received food defendant received water breaks were taken the officers were neither threatening defendant, nor shouting at him throughout the duration of this, the totality of was not ineffective during the trial below as defending cannot demonstrate prejudice resulting from trial was allegedly deficient performance as the result of the trial, there's not a reasonable probability that it would be different, but for trial there was no physical description of one of the two shooters who were identified the different the two different shell casings found at the shooting scene support the conclusion that there were two shooters. Shantay's Day testified that he spoke with both defendant and Marcus Barber, the other alleged shooter who was identified by multiple witnesses in two different photo arrays, Shantay's Day spoke with both of them, based on his conversation he was confident that they would go to commit an armed robbery or at least an attempted armed robbery, in fact, they gave Marcus Barber, one of the gun in order to further that that result. Shantay's Day saw them both immediately after the shooting and saw that they both had firearms, and that they change clothes and fled together. All this evidence, and what evidence that I've not included in my argument but was in the brief and in the record, overwhelmingly demonstrated that defendant was guilty of the charge defense, such that even if trial counsel was did give deficient performance, the trial trials outcome. There's not a reasonable probability that it would have been different, but for this allegedly deficient performance, saying no questions the state requests that this court affirm the trial court's judgment. Thank you. Thank you, counsel, Mr. overwhelming evidence of the prejudice question. There was no physical description given of the two shooters, their physical description of two of the people that were there that day. But the only description we have about any of the shooters is that one of them wore a red hoodie. And again, that tracks with the evidence of the person that was seen outside the Western Union shortly after after not north to blocks where we agree with the trial court that the motion to suppress was properly denied, and the defendants confession is admitted, then how do you demonstrate that there's a probability that the result would have been different than some of these. Technical points that you're raised about trial counsel's not handling certain aspects of the evidence. Thank you, that's a good question I'm just about to zero in on, I was unfortunately taken a long way to get there. If the confession comes in what we have is tomorrow placing himself on the scene. We don't have a single person saying that tomorrow Myers fired a gun. We have two guns were fired, and somewhere between two and four people were maybe there again we have some good evidence that Michael Ross was one of those people. But there's no physical description of anybody who shot a gun, except the person who was wearing a red hoodie. Now for accountability that might get them on the ultimate charge, but that doesn't put a, that doesn't happen firing and gun does that doesn't subject him to the 20 year firearm enhancement. So, all of those are tribal issues and their verdict questions. So we have a reasonable doubt that the evidence is not overwhelming that that tomorrow ever fired a gun. All we have is his confession that he was there. So, that tracks with the prejudice question on the latter half. Again, Defense Council could have asked the court to take another look at the confession, Defense Council could have put good strong evidence of Michael Ross's culpability before the court council could have taken a better look at the business record evidence, etc. But Council didn't do any of those things and we have a cumulative effect that says we can't be very sure in the court's verdict that tomorrow fired a gun. If you take out his statement we don't have a lot of good evidence that he was out on the scene of the crime at all. So, any other questions. Otherwise, we appreciate the time. Thank you, counsel, court take this matter under advisement, the court stands in recess.